# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JOHNNY McCOWAN,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv00037 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Johnny McCowan, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

1

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that McCowan protectively filed his applications for DIB and SSI on April 17, 2007, alleging disability as of April 10, 2007, due to back problems, elbow problems, leg and foot pain and numbness, anxiety and depression. (Record, ("R."), at 114-16, 119-24, 143, 173.) The claims were denied initially and on reconsideration. (R. at 57-62, 64-69, 70-71, 72-74, 75-80, 82-83.) McCowan then requested a hearing before an administrative law judge, ("ALJ"). (R. at 84-85, 98.) The hearing was held on August 5, 2008, at which McCowan was represented by counsel. (R. at 25-51.)

By decision dated January 22, 2009, the ALJ denied McCowan's claims. (R. at 11-24.) The ALJ found that McCowan meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2011. (R. at 14.) The ALJ also found that McCowan had not engaged in substantial gainful activity since April 10, 2007, the alleged onset date. (R. at 14.) The ALJ determined that the medical evidence established that McCowan suffered from severe impairments, including low back pain, status post bilateral elbow surgery, tachycardia and depression, but she found that McCowan did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-20.) The ALJ found that McCowan had

the residual functional capacity to perform a limited range of light work.[1] (R. at 20.) In particular, the ALJ found that McCowan had a one-third deficit in the use of his arms/elbows for pushing or pulling and he could not perform overhead lifting, any climbing, work around heights or on ladders or work with the public. (R. at 20.) The ALJ also found that McCowan could perform posturals occasionally and was limited to simple, noncomplex tasks due to depression. (R. at 20.) The ALJ found that McCowan was unable to perform his past relevant work as a school bus mechanic, an automotive mechanic or a service mechanic. (R. at 22.) Based on McCowan's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that McCowan could perform, including jobs as a machine tender, a kitchen helper and a laundry worker sorting/packing. (R. at 22-23.) Thus, the ALJ found that McCowan was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

After the ALJ issued her decision, McCowan pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 1-5.) McCowan then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on McCowan's motion for summary judgment filed November 3, 2010, and the Commissioner's motion for summary judgment filed December 3, 2010.

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

## II. Facts

McCowan was born in 1975, (R. at 114, 119), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). McCowan graduated from high school. (R. at 30, 150.) McCowan has past work experience as a school bus mechanic and auto mechanic. (R. at 30-31, 144.)

At issue in this case is McCowan's mental residual functional capacity. In rendering her decision on this issue, the ALJ reviewed records from Solutions Counseling, LLC; state agency psychologists and Dr. Uzma Ehtesham, M.D., a psychiatrist. The ALJ also had voluminous records from McCowan's various treating and consultative physicians before him.

The record shows that McCowan has treated with Dr. Matthew W. Cusano, M.D., of Community Physicians, since at least 2005 for arm and back problems. (R. at 283-308.) As early as January 3, 2007, McCowan began complaining of nervousness and anxiety. (R. at 296.) Vada Rose, F.N.P., prescribed Lexapro. (R. at 296.) On April 11, 2007, Rose prescribed Ativan. (R. at 291.) McCowan returned the next day complaining of depression. (R. at 290.) His dosage of Lexapro was increased, and he was referred to counseling. (R. at 290.) On May, 22, 2007, McCowan complained of worsening depression, and Rose prescribed Cymbalta. (R. at 400.) On June 19, 2007, Dr. Cusano referred McCowan to Dr. Ehtesham for psychiatric treatment. (R. at 399.)

McCowan began counseling with Solutions Counseling, LLC, on May 17, 2007. (R. at 347-49, 563-67.) During his intake interview, McCowan complained

of anxiety and chronic pain in his back, legs and arms. (R. at 563, 564.) McCowan said that he suffered from mild depression, moderate/severe anxiety, increased mild/moderate irritability, moderate/severe crying spells, severe panic attacks, a moderate decrease in his energy level and insomnia. (R. at 565.) McCowan also reported that he suffered from severe problem with his attention and concentration. (R. at 565.) He stated that he had suicidal ideations but no intent. (R. at 565.) Susan G. Myers, a licensed clinical social worker, stated that McCowan's mood was depressed, and his affect was anxious. (R. at 565.) His orientation and thought processes were intact with no hallucinations or delusions. (R. at 565.) McCowan's judgment/insight was limited. (R. at 565.) McCowan was diagnosed as suffering from a dsythymic disorder and panic disorder without agoraphobia. (R. at 565.) McCowan's then-current Global Assessment of Functioning,[2] ("GAF"), score was placed at 50.[3] (R. at 565.)

On June 6, 2007, McCowan stated that he was about the same. (R. at 566.) The record reflects that McCowan was prescribed Cymbalta. (R. at 566.) The only changes in McCowan's reported symptoms were that he listed his anxiety as mild and his problems with his attention and concentration as moderate. (R. at 566.) McCowan did not report suffering from any panic attacks. (R. at 566.) On August 27, 2007, McCowan stated that his pain had increased. (R. at 567.) McCowan

---

[2] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[3] A GAF of 41-50 indicates "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

complained of severe depression, anxiety, irritability, crying spells and panic attacks. (R. at 567.) He complained of severe insomnia and a severe decrease in his energy level and his attention and concentration. (R. at 567.) McCowan stated, "noise I can't stand." (R. at 567.) Myers stated that McCowan "continues to be unable to work," but did not indicate whether that was from a physical or mental standpoint. (R. at 567.)

On June 27, 2007, Eugenie Hamilton, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), on McCowan. (R. at 357-69.) Hamilton stated that McCowan suffered from nonsevere depression and anxiety. (R. at 357, 360, 362.) Hamilton stated that McCowan had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace. (R. at 367.) Hamilton stated that McCowan had not suffered any repeated episodes of decompensation of extended duration. (R. at 367.)

On October 18, 2007, Richard J. Milan Jr., Ph.D., a state agency psychologist, completed a PRTF on McCowan. (R. at 427-40.) Milan stated that McCowan suffered from nonsevere depression and anxiety. (R. at 427, 430, 432.) Milan stated that McCowan had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace. (R. at 437.) Milan stated that McCowan had not suffered any repeated episodes of decompensation of extended duration. (R. at 437.)

McCowan began treating with Dr. Uzma Ehtesham, M.D., a psychiatrist, on July 25, 2007.[4] (R. at 493-94.) McCowan told Dr. Ehtesham that he felt sad and tense and could not stand a lot of noise. (R. at 493.) McCowan said that he felt hopeless and worthless and could not relax. (R. at 493.) Dr. Ehtesham diagnosed McCowan as suffering from a major depressive disorder and generalized anxiety disorder. (R. at 494.) She placed his then-current GAF score at 60.[5] (R. at 494.) Dr. Ehtesham increased McCowan's Cymbalta. (R. at 494.) On July 30, 2007, Dr. Ehtesham stated that McCowan's depression was stable, but his anxiety was worse. (R. at 492.) She stated that McCowan's affect was depressed, and his mood was anxious. (R. at 492.) Dr. Ehtesham again increased McCowan's Cymbalta and prescribed Valium. (R. at 492.)

On August 27, 2007, Dr. Ehtesham reported that McCowan recently quit work. (R. at 491.) McCowan complained that his depression was not improving and that his mind was racing at times. (R. at 491.) He stated he was very tired and agitated. (R. at 491.) Dr. Ehtesham again increased his Cymbalta, discontinued Valium and prescribed Ativan. (R. at 491.) On September 12, 2007, McCowan told Dr. Ehtesham that his mood was less of a problem and anxiety was more of a problem. (R. at 490.) He stated that he was less sad and that his angry outbursts had lessened. (R. at 490.) Dr. Ehtesham continued McCowan on Cymbalta and Ativan and started trazodone and Lyrica. (R. at 490.)

---

[4] Many of Dr. Ehtesham's hand written notes are not legible.
[5] A GAF of 51-60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

7

On September 21, 2007, Dr. Ehtesham completed a Mental Status Evaluation Form for McCowan. (R. at 411-15.) On this form, Dr. Ehtesham stated that McCowan suffered from severe depression with mood swings. (R. at 411.) She stated that McCowan heard voices off and on. (R. at 411.) Nonetheless, she also stated that no psychosis or delusions were noted. (R. at 411.) Dr. Ehtesham stated that McCowan's relationships were improving. (R. at 411.) She stated that McCowan had decreased appetite, sleeping, concentration and memory. (R. at 412-14.) She also stated that McCowan's judgment was fair and that he experienced panic attacks under stress. (R. at 413.) She stated that McCowan experienced halluncinations, but did not describe them. (R. at 414.) She also stated that McCowan experienced confusion at times. (R. at 414.)

On October 10, 2007, McCowan reported that anxiety was still a problem, but that his depression was fairly well-controlled. (R. at 489.) McCowan stated that his mind was racing less than before. (R. at 489.) Dr. Ehtesham stated that no psychosis or paranoid ideations were noted. (R. at 489.) Dr. Ehtesham increased McCowan's trazodone and Vistaril. (R. at 489.) On November 6, 2007, McCowan stated that he was having increased panic attacks. (R. at 488.) Dr. Ehtesham noted that McCowan was experiencing audio and visual hallucinations, but did not describe them. (R. at 488.) Dr. Ehtesham started McCowan on Seroquel. (R. at 488.)

On November 20, 2007, Dr. Ehtesham stated that McCowan suffered from a major depressive disorder and generalized anxiety disorder, but that she needed to rule out whether he also suffered from bipolar disorder. (R. at 487.) She noted that McCowan, however, reported that his depression was stable. (R. at 487.)

McCowan complained of his mind racing and that his anger was worse. (R. at 487.) Dr. Ehtesham again increased McCowan's Cymbalta and added Abilify. (R. at 487.) On January 8, 2008, Dr. Ehtesham diagnosed McCowan with bipolar disorder. (R. at 573.) McCowan stated that his anxiety and depression were worse and that he did not think his medications were working. (R. at 573.) Dr. Ehtesham stated that hospitalization was recommended because of his panic and suicidal thoughts. (R. at 573.) Dr. Ehtesham noted that McCowan was in imminent danger of hurting himself. (R. at 573.) Dr. Ehtesham continued McCowan's medications other than increasing his Abilify and discontinuing his Vistaril. (R. at 573.) On February 5, 2008, McCowan reported increased anxiety. (R. at 572.)

On March 3, 2008, McCowan told Dr. Ehtesham that his depression, anxiety and anger were less of a problem. (R. at 571.) He also reported suffering from auditory and visual hallucinations, moreso at night. (R. at 571.) On May 15, 2008, Dr. Ehtesham noted that McCowan was going without medication and was worse. (R. at 570.) Dr. Ehtesham noted that McCowan was not suffering from any hallucinations or delusions. (R. at 570.) Dr. Ehtesham prescribed Klonopin, Cymbalta and Zyprexa. (R. at 570.) Dr. Ehtesham noted that McCowan was no imminent threat of committing suicide or homicide. (R. at 570.) On July 16, 2008, Dr. Ehtesham again noted that McCowan was suffering from auditory hallucinations. (R. at 569.) Dr. Ehtesham increased McCowan's Zyprexa. (R. at 569.)

On February 5, 2009, Dr. Ehtesham noted that McCowan's depression was worse and recommended that he be hospitalized. (R. at 599.) Dr. Ehtesham again noted that McCowan was having auditory hallucinations. (R. at 599.) On April 1,

2009, Dr. Ehtesham noted that McCowan's depression was stable, but that he continued to have a problem with anxiety. (R. at 597.) Dr. Ehtesham noted that McCowan was paranoid and suffering from auditory and visual hallucinations. (R. at 597.) Dr. Ehtesham again recommended hospitalization because of worsening depression. (R. at 598.)

On April 2, 2009, Dr. Ehtesham completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental) for McCowan. (R. at 595-96.) Dr. Ehtesham stated that McCowan had problems with severe depression, anger, panic attacks and mood swings. (R. at 595-96.) Dr. Ehtesham stated that McCowan had no useful ability to perform all occupational, performance and social-personal adjustments other than a seriously limited, but not precluded, ability to follow work rules and to maintain personal appearance. (R. at 595-96.) The record contains another undated Medical Assessment Of Ability To Do Work-Related Activities (Mental) completed by Dr. Ehtesham. (R. at 551-52.) On this assessment, Dr. Ehtesham stated that McCowan suffered from depression, anger, mood swings and severe panic attacks. (R. at 551-52.) She stated that medications had been tried with only minimal effect seen. (R. at 551.) Dr. Ehtesham stated that McCowan had no useful ability to perform all occupational, performance and social-personal adjustments other than a seriously limited, but not precluded, ability to follow work rules, to understand, remember and carry out complex job instructions and to maintain personal appearance. (R. at 551-52.) Dr. Ehtesham stated that McCowan was not able to finish work. (R. at 552.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

McCowan argues that the ALJ's finding regarding his mental residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief In

Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 12-18.) In particular, McCowan argues that the ALJ improperly rejected the opinions of his treating psychiatrist. (Plaintiff's Brief at 12.) Based on my review of the record, I agree and recommend that the court vacate the Commissioner's decision denying benefits and remand the case to the Commissioner for further development.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

The ALJ found that McCowan had severe depression with the residual functional capacity to perform a limited range of light work which required only simple, noncomplex tasks and no work with the public. (R. at 20.) In reaching this finding, the ALJ rejected Dr. Ehtesham's assessment of McCowan's work-related abilities. The ALJ stated that she rejected these opinions because they were not supported by the evidence in the file. While the ALJ may have been justified in disregarding Dr. Ehtesham's restrictive assessment, she is not free to simply disregard uncontradicted expert opinions in favor of her own opinion on a subject that she is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984). Once the ALJ rejected Dr. Ehtesham's assessment, the only other psychological opinions contained in the record were those of the nonexamining state agency psychologists. These psychologists found that McCowan did not have a severe mental impairment. Therefore, these opinions cannot provide support for ALJ's finding as to McCowan's mental residual functional capacity.

Based on the above, I find that substantial evidence does not exist in the record to support the ALJ's finding as to McCowan's mental residual functional capacity. I recommend that the court deny McCowan's and the Commissioner's motions for summary judgment, vacate the decision of the Commissioner denying benefits and remand this case to the Commissioner for further development consistent with this decision.

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's finding regarding McCowan's mental residual functional capacity; and

2. Substantial evidence does not exist in the record to support the ALJ's finding that McCown was not disabled under the Act and was not entitled to DIB or SSI benefits.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny McCowan's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand McCowan's claims to the Commissioner for further development.

# Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: February 1, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE